UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRENDEN R.,

                Plaintiff,

         -v-                       5:20-CV-821

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                   OF COUNSEL:

LAW OFFICES OF               KENNETH R HILLER, ESQ.
   KENNETH HILLER, PLLC
Attorneys for Plaintiff
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226

SOCIAL SECURITY            MOLLY CARTER, ESQ.
   ADMINISTRATION          Special Ass't U.S. Attorney
Attorneys for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION & ORDER

## I. INTRODUCTION

On July 20, 2020, plaintiff Brenden R.[1] ("plaintiff" or "claimant") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Child's Insurance Benefits ("CIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

The Commissioner has filed a certified copy of the Administrative Record and both parties have briefed the matter in accordance with General Order 18, which provides that an appeal taken from the Commissioner's final decision denying benefits will be treated as if the parties have filed cross-motions for judgment on the pleadings. *See* FED. R. CIV. P. 12(c).

Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. BACKGROUND

On August 25, 2016, plaintiff applied for CIB and SSI alleging that his low Global Assessment of Functioning ("GAF") score, developmental disabilities, social anxiety, Tourette syndrome, attention deficit / hyperactivity disorder,

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

Asperger syndrome, and autism rendered him disabled beginning on June 25, 2014.  R. at 81–84.[2]

Plaintiff's claim was initially denied on November 3, 2016.  R. at 81–82. At his request, a video hearing was held before Administrative Law Judge ("ALJ") Charlie M. Johnson on February 26, 2019.  R. at 40–69.  The ALJ conducted the hearing from Baltimore, Maryland.  *Id.*  Plaintiff, represented by attorney Elias Farah, appeared and testified from Horseheads, New York.  *Id.*  The ALJ also heard testimony from Vocational Expert Robin Johnson.  *Id.*

On March 28, 2019, the ALJ issued a written decision denying plaintiff's application for benefits.  R. at 10–20.  This decision became the final decision of the Commissioner on May 20, 2020, when the Appeals Council denied plaintiff's request for review.  *Id.* at 1–3.

## III.  LEGAL STANDARD

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

---

[2] Citations to "R." refer to the Administrative Record.  Dkt. No. 10.

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520.[3] At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." § 404.1520(a)(4)(i). If so, the claimant is not disabled regardless of his medical condition or other factors. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable condition that "significantly limits" his physical or mental ability to do basic work activities. § 404.1520(c).

---

[3] Section 404.1520 sets forth the five-step evaluation used for DIB claims. A parallel set of regulations govern SSI applications. *See* 20 C.F.R. § 416.920(a)(4). Although ALJs typically use a shortened, three-step analysis to evaluate children's benefits claims, the five-step standard applies to plaintiff's CIB claim because he applied for benefits after reaching age eighteen. §§ 404.350(a)(5), 416.924(f); *see also Younes v. Colvin*, 2015 WL 1524417, at *2 n.3 (N.D.N.Y. Apr. 2, 2015).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings"). § 404.1520(d). If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors. § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work." § 404.1520(e)–(f). If so, the claimant is not disabled. § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy. § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five. *Id*.

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the

"Agency").  42 U.S.C. § 405(g).  However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up).  "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  This is so regardless of whether or not the decision is otherwise supported by "substantial evidence." *See id*.

## IV.  **DISCUSSION**

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since June 25, 2014, the alleged onset date; (2) plaintiff's anxiety and autism were "severe" impairments within the meaning of the Regulations; and that (3) these severe impairments, whether considered individually or in combination, did not meet or equal any of the Listings.  R. at 13–14.

At step four, the ALJ determined that plaintiff retained the RFC to perform a full range of work at all exertional levels but could only tolerate occasional interaction with others.  R. at 15.  Next, the ALJ determined that plaintiff had no past relevant work.  *Id*. at 19.  After considering the relevant factors, the ALJ determined that plaintiff retained the RFC to perform work in representative jobs such as a "hand packager," a "marker," and a "routing clerk."  *Id*.

Because these representative jobs existed in sufficient numbers in the national economy, the ALJ concluded that plaintiff was not disabled between June 25, 2014, the alleged onset date, through March 28, 2019, the date of his written decision.  R. at 20.  Accordingly, the ALJ denied plaintiff's application for benefits.  *Id*.

## A.  <u>Plaintiff's Appeal</u>

Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence because he: (1) failed to account for certain mental limitations found in the medical opinions on which he relied; and, relatedly, (2) improperly discounted plaintiff's subjective complaints of more substantial mental limitations.  Pl.'s Mem., Dkt. No. 11-1 at 8–15.[4]

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'"  *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and subjective symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

---

[4]  Pagination corresponds to CM/ECF.

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. supp. 3d 626, 640 (S.D.N.Y. 2019). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192–93 (citation omitted).

### 1. <u>The Medical Opinion Evidence</u>

Plaintiff contends the ALJ failed to account for certain non-exertional limitations found in the medical opinions on which he relied, and, relatedly, failed to adequately explain why he did not adopt those additional restrictions as part of his RFC formulation. Pl.'s Mem. at 8.

Broadly speaking, the Regulations divide evidence from medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[5] Under this category-based approach, an opinion from a "treating source" enjoys special treatment: it receives *controlling* weight as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

---

[5] A treating source included a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).[6]

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted). "And when a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight." *Id.*

In fact, a treating physician's opinion may also be properly discounted, or even entirely rejected, when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (cleaned up).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating

---

[6] On January 18, 2017, the SSA revised the rules regarding the way it evaluates evidence from medical sources. The new Regulations apply to claims filed on or after March 27, 2017. Because plaintiff's claim was filed on August 25, 2016, the prior Regulations appear to govern this appeal. The parties do not argue otherwise.

physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in a particular case.  20 C.F.R. §§ 404.1527(c), 416.927(c).

Beyond this so-called "treating physician rule," the same six factors set forth above apply with equal force to the evaluation of the remaining categories of medical evidence recognized by the Regulations:  the "acceptable" and "other" sources mentioned earlier.  *Tammy Lynn B.*, 382 F. Supp. 3d at 194.  The former, those deemed "acceptable" sources, include "licensed physicians (medical or osteopathic doctors, psychologists, optometrists, podiatrists, and speech-language pathologists."  *Id.*  The latter category, deemed "other" in SSA parlance, are "ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists."  *Id.*

Importantly, only evidence from a "treating" or "acceptable" source can be relied upon to establish the existence of a medically determinable impairment.  *Tammy Lynn B.*, 382 F. Supp. 3d at 194.  However, evidence from all three sources "can be considered when determining severity of impairments and how they affect individuals' ability to function."  *Id.* Finally, while the six-factor analysis set forth above applies in all cases except where "controlling" weight is given to a treating physician's opinion,

an ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (noting that an ALJ need not expressly recite each factor so long as it is "clear from the record as a whole that the ALJ properly considered" them).

Measured against these legal standards, plaintiff's challenge to the ALJ's analysis of the opinion evidence must be rejected.  The ALJ determined that plaintiff retained the RFC to perform a full range of work at all exertional levels with a single non-exertional limitation: plaintiff could only tolerate "occasional interaction with others."  R. at 15.  In reaching this conclusion, the ALJ relied primarily on opinions from consultative examiner Dennis M. Noia, Ph.D, and non-examining consultant O. Fassler, Ph.D.  *Id.* at 15–18.

On October 27, 2016, Dr. Noia met with plaintiff and performed a psychiatric evaluation.  R. at 307–310.  After taking plaintiff's history and conducting a mental status examination, Dr. Noia opined that plaintiff had "no limitations" in understanding and following simple instructions and directions, in performing simple tasks, in maintaining attention and concentrations, in his ability to attend to a routine and maintain a schedule, in his ability to learn new tasks, and in his ability to make appropriate decisions.  *Id.* at 309–310.  However, Dr. Noia assessed (1) a "moderate"

limitation in plaintiff's ability to relate to and interact with others and (2) a "mild" limitation in plaintiff's ability to deal with stress.  *Id*. at 310.

The ALJ afforded "some weight" to this opinion.  R. at 17.  As the ALJ explained, the opinion was consistent with Dr. Noia's recorded observations, which included his finding that plaintiff had an "overall moderately adequate presentation in his manner of relating and social skills, intact attention and concentration skills, and normal motor behavior, normal posture, and proper hygiene."  *Id*.

However, the ALJ also determined that Dr. Noia's opinion was "partially inconsistent with other evidence."  R. at 17.  As the ALJ explained, there was some evidence elsewhere in the record—including testimony from plaintiff's mother and from plaintiff's school reports—tending to show that plaintiff experienced more anger, social isolation, and difficulties with concentration than were otherwise reflected in Dr. Noia's opinion.  *Id*.

On November 2, 2016, Dr. Fassler offered a psychiatric opinion based on his review of plaintiff's existing record.  R. at 88–91.  Dr. Fassler opined that plaintiff was "not significantly limited" in his ability to carry out simple or detailed instructions, to perform activities within a schedule and maintain regular attendance, to sustain a routine without special supervision, to make simple work-related decisions, or to complete a workweek without disruptive psychological symptoms.  *Id*. at 88–89.  However, Dr. Fassler assessed

"moderate" limitations in plaintiff's ability (1) to maintain attention and concentration for extended periods and (2) to work in coordination with or proximity to others without being distracted by them. *Id.* at 88.

The ALJ afforded "great weight" to this opinion. R. at 16. As the ALJ explained, Dr. Fassler's opinion was "consistent with [plaintiff's] subjective statements" and with the medical evidence as a whole. *Id.* Even so, the ALJ recognized that there was some evidence in the medical record to indicate that plaintiff was "quick to anger, snaps at his parents, and only has social interactions online" and sometimes experienced "poor concentration." *Id.*

Plaintiff contends that the ALJ erred because his RFC determination does not include any non-exertional limitation in "concentration or pace" or any non-exertional limitation related to plaintiff's ability to handle stress. Pl.'s Mem. at 10–11. As plaintiff points out, Dr. Noia assessed a "mild" limitation related to stress and Dr. Fassler assessed "moderate" limitations related to concentrate or pace. *Id.* According to plaintiff, the ALJ should have either included these limitations in the RFC or done a better job explaining why he rejected them. *Id.*

The problem with this argument is that it overstates the ALJ's obligation to explain his reasoning and understates plaintiff's burden of proof at step four. As an initial matter, "there is no requirement that the ALJ pick one RFC and use that particular evaluation in its entirety." *Samantha S. v.*

*Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 184 (N.D.N.Y. 2019) (cleaned

up).  Rather, "it is the ALJ's responsibility to choose between properly

submitted medical opinions and other competent evidence to piece together

an overall [RFC] assessment." *Id.* at 185 (cleaned up).  In doing so, "an ALJ

is not required to discuss every piece of evidence in the record or reconcile

every inconsistent in the record." *Gannett v. Colvin*, 2014 WL 7345694, at *8

(N.D.N.Y. Dec. 23, 2014).  In short, the ALJ's narrative explanation makes

clear that he considered Dr. Noia and Dr. Fassler's opinions in light of other

substantial evidence in the record and reached an overall RFC assessment in

accordance with the governing law.

Equally problematic, plaintiff's argument on this point boils down to his

citation to some other pieces of evidence in the record that he believes tend to

support a more restrictive RFC finding.  That is not enough to warrant

remand. *Cf. Greene v. Astrue*, 2012 WL 1248977, at *3 (D. Mass. Apr. 12,

2012) ("[I]n what has become a too common practice, Plaintiff's counsel

merely summarizes evidence in the record that she believes supports her

client's argument that she is disabled.").

To the contrary, "the ALJ has both the ability and the responsibility to

resolve conflicts in the evidence." *Doty v. Comm'r of Soc. Sec.*, 2017 WL

4621630, at *6 (N.D.N.Y. Oct. 13, 2017) (Suddaby, J.).  "The substantial

evidence standard means that once an ALJ finds facts, [a court] can reject

those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original).

In other words, a claimant must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Z.J.F. ex rel. Conkling v. Comm'r of Soc. Sec.*, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (Carter, M.J.).  As explained *supra*, the ALJ's narrative discussion establishes that he reached a series of reasonable, supportable conclusions based on substantial evidence in the record.

Finally, plaintiff contends the ALJ should have engaged in a more thorough discussion of plaintiff's ability to handle stress in light of Dr. Noia's finding of "mild" limitation in that area.  Pl.'s Mem. at 10.  However, this argument is not a basis for remand, either.  "Although the ability to handle work-related stress is an important component of the RFC determination, it is not a roadblock to competitive work under all circumstances."  *Cheri Lee H. v. Comm'r of Soc. Sec.*, 2020 WL 109008, at *11 (N.D.N.Y Jan. 9, 2020).

The ALJ's RFC determination accounted for this "mild" limitation in stress by including a non-exertional restriction: plaintiff could only tolerate "occasional interaction with others."  The burden is on plaintiff to show that the record evidence demands a more restrictive RFC, since the ALJ was within his rights to partially rely on evidence of plaintiff's "educational and

vocational success" in declining to assess a more restrictive set of non-exertional limitations. *Austin D. v. Comm'r of Soc. Sec.*, 2019 WL 185831, at *8 (N.D.N.Y. Jan. 14, 2019) (Baxter, M.J.).

That is especially so where, as here, Dr. Fassler also opined that plaintiff retained the "ability to perform unskilled work on [a] sustained basis," R. at 90, and the ALJ relied on only *unskilled* representative jobs in making in finding plaintiff "not disabled" at step five  *See, e.g.*, *Matta v. Astrue*, 508 F. App'x 53, 55 (2d Cir. 2013) (summary order) ("finding "moderate" limitations in concentration, persistence, and pace and/or social functioning did not preclude plaintiff from performing unskilled work in a routine setting that involved only minimal contact with others). Accordingly, plaintiff's challenge to the medical opinion evidence will be rejected.

## 2. **Subjective Testimony**

Plaintiff also contends the ALJ improperly assessed his hearing testimony.[7] Pl.'s Mem. at 11–15. Specifically, plaintiff argues the ALJ failed to consider certain portions of the record that tended to support his testimony of greater limitation and overstated the relevance of plaintiff's activities of daily living. *Id*. at 14.

---

[7] Effective March 16, 2016, the Commissioner eliminated the use of the term "credibility" from this analysis to make it clear that this "is not an evaluation of the claimant's character." *Debra T. v. Comm'r of Soc. Sec.*, 2019 WL 1208788, at *9 n.5 (N.D.N.Y. Mar. 14, 2019) (Dancks, M.J.). However, the standard for evaluating subjective symptoms has not changed. *Id*.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence.'" *Samantha S.*, 385 F. Supp. 3d at 187 (quoting *Adams v. Colvin*, 2016 WL 3566859, at *7 (N.D.N.Y. June 24, 2016)).

"Where the record evidence does not fully support a claimant's testimony, the ALJ must employ a two-step analysis to evaluate the claimant's reported symtpoms." *Samantha S.*, 385 F. Supp. 3d at 187 (citation omitted). "First, the ALJ must determine whether, based on the objective medical evidence, a claimant's medical impairments could reasonably be expected to produce the pain or other symptoms alleged." *Id.* "Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work." *Id.*

"At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms;

(6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms." *Samantha S.*, 385 F. Supp. 3d at 187–88 (citation omitted).

"The ALJ must provide specific reasons for the determination." *Debra T.*, 2019 WL 1208788, at *10 (citation omitted). "However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination." *Id.* "In other words, an ALJ must discuss the relationship between the plaintiff's medically determinable impairment, the plaintiff's reported symptoms, his conclusions regarding the plaintiff's functioning, and why the plaintiff's reported symptoms are or are not consistent with the evidence in the record." *Samantha S.*, 385 F. Supp. 3d at 188 (citation omitted).

Measured against these standards, plaintiff's challenge to the ALJ's analysis of his testimony must also be rejected. First, plaintiff faults the ALJ for characterizing his school records too broadly. Pl.'s Mem. at 13. According to plaintiff, various report cards and teacher questionnaires tend to support a finding that plaintiff generally performed poorly in school. *Id.* But as the Commissioner explains in detail, there is more than sufficient evidence in

this exhibit to support the ALJ's generally more positive characterization of plaintiff's academic record.  Def.'s Mem., Dkt. No. 12 at 15–16.

Second, plaintiff contends that the ALJ incorrectly concluded that most of plaintiff's medical examinations were "normal" in light of the various "abnormal" findings in the record.  Pl.'s Mem. at 13.  But as the Commissioner again explains in detail, there is more than sufficient evidence of "normal" examination findings to support the ALJ's partial reliance on this factor.  Def.'s Mem. at 17.  Accordingly, plaintiff's challenge to the ALJ's evaluation of his testimony will also be rejected.

## IV.  <u>CONCLUSION</u>

The ALJ applied the correct legal standards and supported his written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1.  The Commissioner's motion for a judgment on the pleadings is GRANTED;

2.  Plaintiff's motion for a judgment on the pleadings is DENIED;

3.  The Commissioner's final decision is AFFIRMED; and

4.  Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated:  December 15, 2021
         Utica, New York.

David N. Hurd
U.S. District Judge